IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LORI A. RIVERS,

             Plaintiff,

    v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

             Defendant.

CIVIL ACTION FILE NO.

1:05-CV-2188-JFK

## <u>ORDER AND WRITTEN OPINION</u>

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her application for a period of disability and disability insurance benefits.  For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** for further proceedings.

## I.    Procedural History

Plaintiff Lori A. Rivers filed an application for a period of disability and disability insurance benefits on October 11, 2002, alleging that she became disabled

on December 20, 2001.  [Record ("R.") at 86-88].  After her application was denied

initially and on reconsideration, she requested an administrative hearing, which was

held on July 7, 2004, before an Administrative Law Judge ("ALJ").  [R. at 22-85].  A

decision was issued by the ALJ on September 20, 2004, denying Plaintiff's claims.  [R.

at 16-21].  Plaintiff requested review of the ALJ's decision, but the Appeals Council

denied her request on July 22, 2005, making the hearing decision the final decision of

the Commissioner.  [R. at 5-7].  On August 23, 2005, Plaintiff filed the above-styled

action in this court seeking review of the final decision.  [Doc. 1].


**II.    Facts**

Plaintiff Lori A. Rivers, forty-one (41) years old at the date of the administrative

hearing, has past work experience as an administrative assistant, executive secretary,

and secretary.  [R. at 17].  The ALJ found that Plaintiff has migraine headaches and

trigeminal neuralgia.  [R. at 18].  Although these impairments are "severe" within the

meaning of the Social Security Regulations, the ALJ found that they did not meet or

equal, either singly or in combination, the requirements for any impairment listed in

Appendix 1, Subpart P, Regulations No. 4.  [Id.].  The ALJ found that Plaintiff could

not perform her past relevant work but that she was capable of making a successful

2

adjustment to work that exists in significant numbers in the national economy. [R. at 20]. The ALJ, therefore, concluded that Plaintiff was not under a disability. [Id.].

The ALJ's decision [R. at 16-21] states the relevant facts of this case as modified herein as follows:

The claimant is a forty-two (42) year old individual with a high school education and two (2) years of college. Her past work experience includes employment as an administrative assistant, executive secretary and secretary. She alleges that she became disabled on December 20, 2001, due to trigeminal neuralgia.

The claimant was treated by Alan Maloon, M.D., from May 1999 to May 2003, for atypical right-sided facial pain syndrome. (Exhibits 1F and 2F). On March 7, 2002, Dr. Maloon reported that the claimant's trigeminal neuralgia was stable and controlled on Tegretol, which she was taking twice daily. Dr. Maloon stated that an MRI completed in October 2001 was negative and that the claimant's examination was non-focal. He renewed the claimant's prescription for Tegretol and scheduled a follow-up visit in three (3) months.

On May 20, 2002, Nettleton Payne, II, M.D., examined the claimant for complaints of right-sided trigeminal neuralgia, noting that she had a history of acid reflux that was treated with Tums, a history of left leg arthritis as a child, and currently

3

had flares of arthritis in her knees and hands.  (Exhibit 1F).  Claimant complained of fatigue at levels that prevented her frequently from working.  Claimant's examination was essentially normal.  Dr. Payne continued her on Tegretol.

On May 7, 2003, Dr. Maloon reported that claimant's trigeminal neuralgia was well-controlled on Tegretol but that her migraines were occurring more frequently.  He increased her dosage of Covera HAS.  (Exhibit 2F).

On December 10, 2002, James Stark, Ph.D., completed a consultative psychological evaluation of the claimant, noting that she alleged disability based on a claim of confusion, memory loss, and stress and that she had been diagnosed as having trigeminal neuralgia since the summer of 2002.  (Exhibit 3F).  Dr. Stark diagnosed adjustment disorder with depression and anxiety and assigned her a Global Assessment of Functioning (GAF) scale score of 80, which according to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (SMV-IF) indicates no more than slight impairment in social or occupational functioning.  Dr. Stark stated that there were no indications of thought content or process disorder and no signs of affective disturbance and that her memory and attention did not seem significantly impaired.  He assessed that she could interact well with others and could adhere to a work schedule except as stymied by her facial pain.  An assessment completed by

4

Robert Coyle, Ph.D., a State agency psychological consultant in February 2003, using a Psychological Review Technique Form, determined that claimant did not have a medically determinable mental impairment.  (Exhibit 5F).

At the hearing, the claimant testified that she last worked doing clerical work but left her job due to health reasons and because of the office closing.  She testified that she has problems with memory, migraines and acid reflux.  She stated that she also has arthritis.  She said that the medications she takes have side effects of memory loss and problems talking.  She said that her pain starts in her cheek and travels to the back of her ear to the top of her head.  She stated that as she gets older, the disease gets worse. She stated that she could not work because of attendance problems due to the attacks. She said she has memory problems caused by her medications.  She stated that when she gets an attack, she feels like she can kill herself.  She stated that she writes down when she takes her medication to prevent her from taking an overdose.  The claimant's husband, Jarret Rivers, testified that the claimant has a hard time comprehending and performing basic functions.  He stated that she screams and cries when she has an attack and is not able to function from a half-hour to a couple of days.  The claimant's sister, Jennifer Moss, testified that when the claimant has an attack, she is in pain.  She

5

stated that the claimant used to be very sharp but that now she requires questions to her be repeated and that she does not answer the questions correctly.

Born on May 15, 1963, the claimant is currently forty-one (41) years old. This is defined in the regulations as a younger individual. (20 CFR § 404.1563). She has more than a high school education and transferability of skills is not an issue in this case. The vocational expert, Ms. Bunn-Durham, testified that the claimant's past relevant work as administrative assistant, secretary and executive secretary were all sedentary exertional skilled work. The ALJ specifically asked the vocational expert to consider whether there would be jobs available for an individual forty-one (41) years old, who has a high school education and the residual functional capacity to perform unlimited exertional work with moderate limitation in her concentration, persistence and pace. Ms. Bunn-Durham testified that such individual could not perform claimant's past relevant work and would have no transferable skills but that such individual could perform and adapt to such jobs as ticket seller, with 1,000 such jobs in the Region and 150,000 in the nation, as hand packager, with 3,000 such jobs in the Region and 400,000 in the nation, and as a gate guard, with 3,000 such jobs in the Region and 500,000 in the nation.

AO 72A
(Rev.8/82)

## III.   Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

The scope of judicial review of the Commissioner's decision is limited.  The court's function is (1) to determine whether the record, as a whole, contains substantial evidence to support the findings and decision of the Commissioner and (2) whether the Commissioner applied proper legal standards. See Vaughn v. Heckler, 727 F.2d 1040, 1042 (11th Cir. 1984).  Substantial evidence is more than a scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as

7

adequate to support a conclusion.  See Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The claimant has the initial burden of establishing the existence of a "disability" by demonstrating that she is unable to perform her former type of work.  If the claimant satisfies her burden of proving disability with respect to her former type of work the burden shifts to the Commissioner to demonstrate that the claimant, given her age, education, work experience, and impairment, has the capacity to perform other types of jobs which exist in the national economy.  See Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

Under the regulations as promulgated by the Commissioner, a five (5) step sequential procedure must be followed when evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a) and 416.920(a).  In the sequential evaluation, the Commissioner must consider in order:  (1) whether a claimant is gainfully employed, 20 C.F.R. §§ 404.1520(b) and 416.920(b); (2) whether claimant has a severe impairment which significantly limits her ability to perform basic work-related functions, 20 C.F.R. §§ 404.1520(c) and 416.920(c); (3) whether claimant's impairments meet the Listing of Impairments, 20 C.F.R. §§ 404.1520(d) and 416.920(d); (4) whether claimant can perform her past relevant work, 20 C.F.R. §§ 404.1520(e) and 416.920(e); and (5)

8

whether claimant is disabled in light of age, education, and residual functional capacity, 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a) and 416.920(a).

## IV.   Findings of the ALJ

The ALJ made the following findings:

1.  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  The claimant's migraine headaches and trigeminal neuralgia are considered "severe" based on the requirements in the Regulations.  (20 CFR § 404.1520(c)).

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

9

6.    The claimant retains the residual functional capacity to perform unlimited exertional work with moderate limitation to her concentration, persistence and pace.

7.    The claimant is unable to perform any of her past relevant work.  (20 CFR § 404.1565).

8.    The claimant is a younger individual between the ages of eighteen (18) and forty-four (44).  She has more than a high school education and has no transferable skills from any past relevant work.

9.    The claimant has the residual functional capacity to perform a significant range of unlimited exertional work.  (20 CFR § 404.1567).

10.   Although the claimant's exertional limitations do not allow her to perform the full range of unlimited exertional work, using the medical-vocational rules as a framework for decision-making, there are significant number of jobs in the national economy that she could perform.  Examples of such jobs include work as ticket seller, as hand packager, and as a gate guard.

11.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.  (20 CFR § 1520(g)).

**V.    Discussion**

In the present case, the ALJ found at the first step of the sequential evaluation that Plaintiff had not engaged in any substantial gainful activity since her alleged onset

date.  [R. at 17].  At the second step, the ALJ determined that Plaintiff has migraine headaches and trigeminal neuralgia.  [R. at 18].  Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found at the third step that they did not meet or equal, either singly or in combination, the requirements for any impairment listed in Appendix 1, Subpart P, Regulations No. 4. [R. at 18].  The ALJ found at the fourth step of the sequential evaluation that Plaintiff was not able to perform any of her past relevant work.  [R. at 20].  However, at the fifth step, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff can perform, such as ticket seller, hand packager, and gate guard.  [R. at 19-21].  Accordingly, the ALJ concluded that Plaintiff was not disabled in light of her age, education, and residual functional capacity.  [Id.].

Plaintiff Rivers contends that the ALJ erred and makes a number of arguments in support thereof.  [Doc. 10].  Plaintiff argues that the ALJ failed to adequately explain why he discredited the testimony of Plaintiff and her witnesses.  The court agrees with Plaintiff and, on this basis, finds that the ALJ's decision should be reversed and remanded for further proceedings.

Plaintiff Rivers testified at the administrative hearing that she experiences excruciating pain due to trigeminal neuralgia and that she gets migraine headaches.

11

[R. at 30]. Plaintiff testified: "[O]nce I get the [trigeminal neuralgia] attack, it will last probably about 20 minutes to a half hour, then it takes usually about 15 minutes or so I'd say, for the medication to work. . . . Now, if that doesn't work, then I will kick in with the Darvocet. If the Darvocet doesn't work, then I'll kick in with another Tegretol. So I'll just keep going with the process until I could get to at least a place where I can maintain my pain." [R. at 34]. Plaintiff's husband testified at the hearing that when Plaintiff experiences an attack of pain, she is "not able to function for at least a half an hour to sometimes a couple days, depending on how much medication needed to be given to her during that time." [R. at 46].

Plaintiff stated that she takes Tegretol for the trigeminal neuralgia and that, for her migraines, she takes Covera, Maxalt, and Darvocet. [R. at 31]. She testified that her medications causes her to have problems with memory and articulating her thoughts. [R. at 31-32]. Plaintiff's husband described the difference in his wife's thought processes and in her ability to communicate since experiencing the effects of trigeminal neuralgia and since being on the pain medications. He stated:

> Well, before the – her problems . . . she was very articulate, very sure of herself, able to do anything on her own, and any task that she needed to do. She was extremely efficient in her job performances . . . whereas compared to now, in talking with her, you're really basically explaining to her very carefully in detail what you're talking about, so she is able to

12

comprehend, so her comprehension is extremely less, due to the medication . . . her ability to communicate is – takes extremely longer period of time to communicate and have conversations with her, so that she's able to understand . . . her ability to comprehend, articulate, perform basic functions are – have lessened, and are lessening, you know, gradually each year, with her progression of the illness, and the medication she's taking.

[R. at 44-45].  Plaintiff's sister, who also testified at the hearing, confirmed the effect

that Plaintiff's medications have on her:

[S]he was at one point, very sharp.  Now, it seems more like withdrawing, and I guess, almost as if you have to kind of break a lot of things down to her.  You have to repeat questions to her . . . if you ask her a question, she's not really . . . answering the question.  She's probably giving you some information that . . . you're going to ask her . . . but it's not – she's not answering the question directly, not being as articulate, I guess. . . . She can be in the middle of having a conversation with you, and she'll go total segue into something else . . . you're not even on the same subject any more.  Just not in tune. . . .

[R. at 48-49].

Although Plaintiff's complaints primarily concern her non-exertional

limitations, the ALJ seemed to focus almost exclusively on her exertional limitations,

writing, "In this case there is little evidence of exertional limitations."  [R. at 19].  The

ALJ recounted Plaintiff's allegations, as well as the testimony of her husband and

sister, in his decision and apparently found that they were not credible.  The ALJ

wrote, "The undersigned finds that the claimant's reported subjective allegations

13

concerning her impairments and their impact on her ability to work are credible only to the extent that she can perform no more than unlimited exertional work with moderate limitation in her concentration, persistence and pace." [R. at 19]. However, the ALJ never offered any specific reasons for discrediting the testimony of Plaintiff. This constitutes error.

"[W]here proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983). "If the ALJ decides not to credit a claimant's testimony as to her pain [or other subjective complaints], he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (citing Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988)).

In the present case, the vocational expert ("VE") stated at the administrative hearing that if the testimony of Plaintiff, her husband, and her sister were found credible, there would be no jobs in the national economy that Plaintiff could perform.

[R. at 52-54]. The ALJ's credibility determination, therefore, was critical to the disability decision. However, the ALJ not only failed to "articulate explicit and adequate reasons" for not crediting Plaintiff's complaints as he was required to do, it does not appear that he offered any reasons for discrediting Plaintiff's testimony. The ALJ also did not make any credibility findings with respect to Plaintiff's husband and sister. See Foote, 67 F.3d at 1562 ("A lack of an explicit credibility finding becomes ground for remand when credibility is critical to the outcome of the case."). The Commissioner seeks to justify the ALJ's decision by pointing to portions of the record which show that on certain dates Plaintiff's pain and medication side effects were mild. [Doc. 14 at 10]. But it does not appear that substantial evidence within the record as a whole supports the ALJ's conclusion. More importantly, as Plaintiff correctly notes, "It is the ALJ who must make this finding – not the Commissioner in her Brief." [Doc. 15 at 6].

Remand is clearly warranted in this case. Upon remand, if the ALJ again concludes that Plaintiff's complaints regarding pain and the side effects from her medications are not credible, he must offer specific reasons for rejecting this testimony. The ALJ should also state whether he finds the statements made by Plaintiff's husband and sister, which were entirely consistent with Plaintiff's

15

complaints, to be credible.  If the ALJ decides to discredit the testimony of these witnesses, then he should explain why.[1]

## VI.  Conclusion

For all the foregoing reasons and cited authority, it is **ORDERED** that the decision of the Commissioner denying benefits be **REVERSED** and that this action be **REMANDED** for further proceedings in accordance with the above discussion. See Melkonyan v. Sullivan, 501 U.S. 89, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991).

**SO ORDERED**, this  21ˢᵗ day of APRIL, 2006.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

---

[1]Plaintiff Rivers also argues that the ALJ failed to include significant impairments in his hypothetical question to the VE and that the ALJ ignored the VE's testimony that there were no jobs in the national economy that Plaintiff could perform. [Doc. 10 at 1].  While these arguments are valid, the resolution of issues regarding the hypothetical and the VE's response thereto is entirely dependent on the ALJ's credibility findings.  It goes without saying that upon remand, the ALJ should frame a hypothetical question to the VE that includes all of Plaintiff's impairments, including non-exertional limitations resulting from pain and the side effects of her medications, if such evidence is deemed credible.